marks are much more similar to the crown of opposer's mark than is the crown of applicant's present mark.

\* \* \* \* \*

"It seems to me the consideration should not have been restricted solely to a comparison of the relative prominence of the display of the crown representations in applicant's marks, but should have been extended at least to a comparison of the specific crown symbol of applicant's present mark with the specific crown symbols of applicant's previous marks and with opposer's specific crown symbol. It was opposer's specific crown representation that was involved in the prior opposition proceedings and the question of confusion therewith of applicant's marks by reason of the specific crown representations therein. To my mind the adjudications did not extend to applicant's use in a composite mark of any and all crown representations as prominently as the specific crown representations appeared in applicant's prior marks, particularly as it appears from the testimony that crown representations are in quite general use by the trade on cosmetic and toilet preparations.

"In my opinion the crown representation included in applicant's present mark is so radically and distinctively different from the crown representations of applicant's prior marks and from opposer's mark that res judicata does not apply to the present situation."

It should be understood that in considering the applicability of the doctrine of res judicata in this case opposer relies solely upon the "crown symbol" which it used but never included as a feature of any mark registered by it. The differences between the "symbol" as used by opposer and the "symbol" included in the marks "(b)" which applicant sought to register are described in the decision of the commissioner and we agree with his conclusion to the effect that the difference between applicant's mark here involved and the marks of its former applications render the doctrine of res judicata inapplicable here. A case in point cited by the commissioner is that of A. Leschen & Sons Rope Co. v. American Steel & Wire Co., 55 F.2d 455, 19 C. C. P. A., Patents, 851.

This brings us directly to the ultimate issue, namely, whether the trademark which applicant seeks to register so nearly resembles the trade-mark used by opposer and of which opposer claims

ownership, that when applied to merchandise conceded to be of the same descriptive properties, it would be "likely to cause confusion or mistake in the mind of the public or to deceive purchasers," and here again the "crown symbol" feature, under the pleadings before us seems to be the controlling, or at least a prominent, factor.

It is our view, upon the record before us, that opposer is not entitled to claim ownership of all forms or styles of representations of crowns as a trade-mark for its goods, so that it may exclude use or registration of a form or style differing from its own in the particulars described in the decision of the commissioner, and, in our opinion, there is no likelihood of confusion resulting from the registration applicant seeks.

The decision of the commissioner is affirmed.

Affirmed.

31 C.C.P.A.(Patents)

## In re COOK.

### Patent Appeal No. 4775.

Court of Customs and Patent Appeals.

Dec. 7, 1943.

Wm. P. Spielman, of Washington, D. C., and Harvey W. Edelblute, of Stamford, Conn., for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

All the claims (4 and 9) of appellant's application for a patent for improvements in stabilization of motor fuels were finally rejected by the Primary Examiner of the United States Patent Office upon two grounds: a. non-inventive over a reference patent to Semon, No. 2,067,686, January 12, 1937; b. non-inventive over the said Semon patent in view of other named references, which rejection, in view of our conclusion, we do not need to consider here.

The Board of Appeals affirmed the decision of the examiner in rejecting the said claims and, as we interpret its opinion, affirmed the rejection upon the ground that the claims were not inventive over said Semon patent. There has been some contention in the argument before us that the board's decision must be construed as a disapproval of that part of the examiner's decision which relied upon the references other than the said Semon patent. Since we agree with the holding of the board that the two claims involved define nothing inventive over the said Semon patent, it is not necessary for us to discuss further the question as to whether the board's opinion should or should not be construed in accordance with the contentions of appellant.

The claims involved are as follows:

"4. A motor fuel comprising gasoline containing gum-forming constituents and a small amount of N-N'-di-secondary propyl-p-phenylene diamine as a gum formation inhibitor.

"9. A method of stabilizing gasoline which normally tends to deteriorate and develop gums on storage which comprises adding thereto a small amount of an N-N'-di-secondary-propyl-p-phenylene diamine."

Although appellant, in his application, has referred to numerous ingredients belonging to a certain class as being proper materials to use in gasoline to inhibit gum formation, the claims here involved name only N-N'-di-secondary-propyl-p-phenylene diamine, which is appellant's preferred material.

The said Semon patent defines the invention there involved as relating "to the art of preserving rubber, synthetic plastics, fatty oils, petroleum products, and like organic materials against unduly rapid deterioration due to oxidation and the like." It will be noticed in the above quotation that the patentee states that his invention relates to preserving petroleum products, and he subsequently, in the specification, names the particular stabilizer mentioned in the claims at bar. The latter fact is stated by the examiner and agreed to by appellant.

It was the view of the board that while a great number of products may come within the heading "petroleum products," "the one product which is most generally used is gasoline," and that since the patentee clearly discloses the use of the inhibitor in petroleum products, it would not involve invention to follow the suggestion of the patent and experiment with gasoline, and to determine that the inhibitor prevented deterioration or the development of gum.

Appellant argues that the patent does not mention gasoline or any other petroleum product by name, and that therefore the patent does not disclose the use of the claimed ingredient for the purpose of inhibiting gum formation in gasoline. Appellant claims that he has obtained a new result by the use of his inhibitor that could not be expected from the action of the inhibitor when applied to rubber.

It is not contended by anyone that appellant's entire disclosure is set out in the Semon patent or that said patent anticipates appellant's alleged invention, but it is the holding of the tribunal appealed from that in view of the circumstances above stated, it would not amount to invention to do what appellant has done.

We are in agreement with the holding of the board. Being familiar with Semon's teaching, it would not involve invention for one skilled in the art to follow the suggestion of the patentee to use the

product he mentions as an inhibitor for "petroleum products" in gasoline for the purpose of determining its stabilizing qualities and by his experiments discover that it was superior to other anti-oxidants used in the art.

The decision of this court in Re Grettie, 104 F.2d 359, 26 C.C.P.A., Patents, 1259, cited by the Solicitor for the Patent Office, seems to be pertinent for consideration in the decision of the instant case.

It follows that the decision of the Board of Appeals, from which decision this appeal is taken, should be, and is, affirmed.

Affirmed.

31 C.C.P.A. (Patents)

**In re GROSSMAN et al.**

**Patent Appeal No. 4814.**

Court of Customs and Patent Appeals.

Dec. 7, 1943.

Paul Kolisch, of New York City, for appellant.

W. W. Cochran, of Washington, D.C. (E. L. Reynolds, of Washington, D.C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner finally rejecting claims 8 to 12, inclusive, of an application for a patent for an electric switch. Four claims were allowed.

Claim 9 is illustrative, and reads as follows: "9. In an electric switch, a housing, wires leading into said housing, contacts within said housing connected with said wires, a handle on said housing for opening and closing said contacts, thus establishing an off position and a plurality of operating positions for the switch, an electric lamp within said housing and visible from outside of said housing when lighted, and a circuit for said lamp closed throughout all operating positions and opened in the off position."

The reference cited is Kroupa 1,647,300, November 1, 1927.

The invention relates to an improvement in electric switches, particularly to a multiple electric snap switch. It comprises a housing which contains the elements of the switch. On the outside of the housing is a knob or handle which by turning governs the electric current which generates heat through heating elements. Within the housing there is an electric light bulb which is lighted during the time the switch is in the on position. The device contains two heating elements, and the switch comprises three spaced fixed contacts which are brought into successive engagement with a rotatable cam having three metal sections and one fibre section, in order to connect the desired heating element into the circuit or to cut them both out or to connect them both in. The device is intended for use in electric heating pads and the like, and may produce high, medium and low temperatures in the pad. The user of the pad may always know when the current is on by observing the light and thus, it is said, guard against accidents.

The Kroupa patent relates to electric switches and is adapted for use in circuit testers by which a plurality of circuits may be separately and readily tested to detect blown-out fuses, or other defects in an electrical system which interfere with the